# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

GULF WINDS FEDERAL CREDIT UNION,

       Plaintiff,

vs.                                                    CASE NO. 3:07cv468

FIRESTONE BUILDING PRODUCTS
COMPANY, a division of BFS
DIVERSIFIED PRODUCTS, LLC,
BUILDING COMMITTEE, INC., and
LAFAYETTE CONSTRUCTION
COMPANY, INC.,

       Defendants.

_____/

## ORDER ON MOTION TO DISMISS

Before me is the Motion to Dismiss Plaintiff's Complaint filed by Defendant Firestone Building Products Company, a division of BFS Diversified Products, LLC[1] (Doc. 8.)  Plaintiff opposes the motion.

---

[1]The motion states that the proper name for the moving defendant is Firestone Building Products Company, a division of BFS Diversified Products, LLC, and not Firestone Building Products, Inc, as previously captioned. Accordingly, all future documents filed in this case shall include the correct name for this defendant.

## I.  Facts

This diversity action is a dispute over the construction of a new roof. Plaintiff Gulf Winds Federal Credit Union ("Credit Union") alleges that in November 2004, it hired Defendant Building Committee, Inc. ("BCI"), to replace the roof on the Credit Union's administration building after the roof was damaged by Hurricane Ivan.  The Credit Union required that the newly installed roof be a "Firestone EPDM Roofing System" because that roofing system was purportedly covered under a fifteen-year warranty.  The EPDM Roofing System was manufactured by Defendant Firestone Building Products Company, a division of BFS Diversified Products, LLC ("Firestone").  BCI subcontracted the construction of the roof to Defendant Lafayette Construction Company, LLC ("Lafayette").

The Credit Union alleges that both BCI and Lafayette represented that a Firestone EPDM Roofing System would be installed on the building and that the roof would be covered under the warranty.  In December 2004, upon completion of the roof, the Credit Union paid the final bill for the roof's construction in full.

According to the Credit Union, the roof that was installed was not a Firestone EPDM Roofing System.  Further, the Credit Union asserts that the roof leaked.  Substantial amounts of rainwater allegedly entered the building through the newly installed roof, and Credit Union employees were forced to cover computers with tarps; place buckets in several locations to collect the rainwater; and pour bleach onto the walls of the building to prevent mold from growing.  BCI and Lafayette purportedly failed to respond to the Credit Union's requests for repairs.

In September 2005, Sunbelt Master Contractors ("Sunbelt"), a Firestone-approved contractor, inspected the leaking new roof.  Sunbelt recommended that

the roof be replaced because it had been so poorly installed. The Credit Union
entered into a contract with Sunbelt to install a new Firestone EPDM Roofing
System.  Before construction began on the new roof, however, the Credit Union
discovered that Firestone would not cover the roof under warranty, despite an
alleged prior representation by Firestone to the Credit Union that "it would help."
Because Sunbelt allegedly was "getting a lot of heat" from Firestone and did not
want to lose its certification to install Firestone roofing systems, it refused to install
the Firestone EPDM Roofing System.  Ultimately, the Credit Union contracted
with Sunbelt to install a GAF roofing system.

The Complaint (Doc. 1) asserts six causes of action in nineteen counts[2]: (1)
breach of contract (Counts I through IV); (2) rescission (Counts V through VII);
(3) unjust enrichment (Count VIII); (4) fraud (Counts IX through XV); (5)
suppression (Count XVI); and (6) conspiracy (Counts XVII through XVIX).
Defendant Firestone moves to dismiss all claims asserted against it: Counts I
through IV (breach of contract); Counts XII, XIII, and XV (fraud); Count XVI
(suppression); and Counts XVII, XVIII, and XIX (conspiracy).  Plaintiff stipulates
that all counts asserted against Defendant Firestone, excepting Counts XV through
XIX, should be dismissed.[3]  The remaining allegations against Firestone are as
follows:

Count XV (fraud) alleges that Defendants, including  Defendant Firestone,
misrepresented to the Credit Union that a Firestone EPDM roofing system had

---

[2]Several of the counts, particularly the counts alleging fraud, appear to be
unnecessarily repetitious.

[3]In light of Plaintiff's stipulation to dismiss Counts I through IV, XII, and
XIII as to Firestone, I find it proper to dismiss those counts.

been installed.  Count XVI (suppression) avers that Defendants, including Defendant Firestone, failed to disclose to the Credit Union that a Firestone EPDM roofing system had not been installed, despite a duty to disclose.  Counts XVII through XIX (conspiracy) charge that Defendants, including Defendant Firestone, conspired to:  (1) suppress the fact that a Firestone EPDM roofing system had not been installed; (2) overcharge the Credit Union for an inferior roof; and (3) coerce Sunbelt to abandon its efforts to install the promised roof by refusing to issue the promised warranty.  The Credit Union alleges that as a result of Firestone's actions and omissions, it incurred damages to its personal and real property and for lost time; decreased productivity; and inconvenience.

Firestone requests dismissal of Counts XV through XIX under Fed. R. Civ. P. 12(b)(6)[4] on the following grounds:

1.  The Credit Union failed to plead the claim for fraud asserted in Count XV with the particularity required by Fed. R. Civ. P. 9(b);

2.  The Credit Union failed to plead the claim for suppression asserted in Count XVI with the particularity required by Fed. R. Civ. P. 9(b), and Firestone had no duty to disclose information to the Credit Union; and

3.  The claims for conspiracy asserted in Counts XVII, XVIII, and XIX fail because the substantive claims underlying the alleged conspiracies fail.

---

[4]The motion also stated that Firestone reserves the right to challenge this Court's subject matter jurisdiction under Fed. R. Civ. P. 12(h)(3).  However, the motion sets forth no basis for a jurisdictional challenge.  Although a challenge to a court's subject matter jurisdiction may be raised at any time, it is incumbent upon Firestone, as a professional courtesy, to timely notify this Court if subject matter jurisdiction is lacking so as to prevent needless delay and expenditures of the Court's resources as well as those of the Plaintiff.

## II.  Analysis

### A.  Motion to Dismiss Standard

Dismissal under Rule 12(b)(6) eliminates a pleading or portion of a pleading which fails to state a claim upon which relief can be granted.  In deciding whether to dismiss, the court must accept as true all allegations of the complaint and construe those allegations in the light most favorable to the plaintiff.  *See Scheuer v. Rhodes*, 416 U.S. 232, 235, 94 S. Ct. 1683, 1686, 40 L. Ed. 2d 90, 96 (1974); *Lopez v. First Union Nat'l Bank of Florida*, 129 F.3d 1186, 1189 (11th Cir. 1997); *Harper v. Thomas*, 988 F.2d 101, 103 (11th Cir. 1993).

To survive a motion to dismiss for failure to state a claim upon which relief can be granted, the allegations in the complaint must contain enough factual matter (taken as true even if doubtful in fact) to establish "plausible," as opposed to merely "possible" or "speculative," entitlement to relief.  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-66 (U.S. 2007) (citations omitted).  A plausible entitlement to relief exists when the allegations in the complaint traverse the thresholds separating the "conclusory" from the "factual" and the "factually neutral" from the "factually suggestive."  *Id.* at 1966, n.5.  In other words, the factual allegations must "raise a reasonable expectation" or a "reasonably founded hope" that "discovery will reveal evidence" in support of the claim.  *Id.* at 1964-66.  And of course, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'"  *Id.* at 1964-65 (citation omitted).

While a complaint attacked by a motion to dismiss for failure to state a claim upon which relief can be granted does not require detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires

more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not suffice.  *Id.* at 1964-65 (citations omitted).  A court is not required to accept as true a plaintiff's conclusions of law.  *See Solis-Ramirez v. United States Dep't of Justice*, 758 F.2d 1426, 1429 (11th Cir. 1985) (*citing Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974)).  The court may make its own determination of the legal issue, . . . ."  *Solis-Ramirez*, 758 F.2d at 1429.  "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."  *Oxford Asset Mgmt. Ltd. V. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002) (*citing South Florida Water Mgmt. Dist. v. Montalvo*, 84 F.3d 402, 406 (11th Cir. 1996); *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)).  Finally, dismissal under Rule 12(b)(6) does not require appearance, beyond a doubt, that plaintiff can prove no set of facts in support of a claim that would entitle him to relief, although once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint.  *Twombly, supra*, at 1968 (*abrogating Conley v. Gibson*, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80).

## B.  Count XV (Fraud)

Under Fed. R. Civ. P. 9(b), the circumstances constituting an averment of fraud must be stated with particularity; malice, intent, knowledge, and other condition of mind of a person may be averred generally.  The particularity requirement is designed to protect defendants "against spurious charges of immoral and fraudulent behavior" by requiring that one alleging fraud alert the defendant to the "precise misconduct" that forms the basis of the fraud claim.  *Durham v. Bus.*

*Mgmt. Assoc.*, 847 F.2d 1505, 1511 (11th Cir. 1988). Rule 9(b) is satisfied if the complaint sets forth:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1310 (11th Cir. 2002) (*quoting Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001)).

In light of the standard for dismissal under Fed. R. Civ. P. 12(b)(6) and the heightened pleading requirements under Fed. R. Civ. P.  9(b), the claim for fraud asserted in Count XV fails to state a claim upon which relief can be granted. Plaintiff alleges in Count XV that:

> On or about October 23, 2005, Defendants  .  .  . misrepresented the material fact to Plaintiff that Defendants had installed a Firestone EPDM roofing system. Defendants made said misrepresentation when it issued a PIN.[5]  Said misrepresentation willfully to deceive and/or

---

[5]"PIN" is an acronym for "pre-installation notice."  The Credit Union avers that a PIN is a preconstruction requirement for Firestone to issue a warranty covering the Firestone EPDM Roofing System.  According to the Credit Union, Firestone refused to issue a PIN to Sunbelt.  Firestone's articulated reason for not issuing a PIN was that it had already issued a PIN to Lafayette for the defective roof.  However, the Credit Union alleges that the PIN was not issued to Lafayette until *after* Sunbelt requested a PIN, almost one year after Lafayette had installed the leaking roof.

misrepresentations of material fact made recklessly or by mistake which were acted upon by the Plaintiff to its detriment [sic].

(Compl., Doc. 1, p. 17 at ¶ 71.)

The allegations in Count XV, when read in conjunction with all factual averments contained in the complaint, fail to establish a "plausible" or "factually suggestive" claim for fraud against Firestone.  In a nutshell, the Credit Union's claim for fraud appears to be with BCI and Lafayette, not with Firestone.

Plaintiff fails to allege, nor do the factual allegations permit a reasonable inference, that Firestone owed Plaintiff a legal duty; was required to issue Plaintiff a PIN;  was obligated to warrant any of the roofs; or fraudulently induced Plaintiff to purchase a Firestone EPDM Roofing System.  Plaintiff does not set forth any fraudulent statements or omissions made by Firestone before, during, or even within one year after Lafayette's construction of the defective roof.  The only reasonable inference to be drawn is that Firestone had no involvement in Plaintiff's decision to install a Firestone EPDM Roofing System; made no guarantees about the type of roof to be installed and the type of roof that was ultimately installed; made no representations to Plaintiff that the roof would be covered by a warranty; and made no representations to Plaintiff that it would repair the roof.

Plaintiff's sole allegation of a fraudulent communication by Firestone relates to a purported representation on October 23, 2005, approximately one year after the defective roof was installed.  On that date, Firestone allegedly issued a PIN for the roof.  Plaintiff contends that by issuing the PIN, Firestone represented that the roof was a Firestone EPDM Roofing System even though Firestone knew it was not.  This bare and conclusory allegation of a fraudulent misrepresentation fails to

satisfy the requirements for pleading fraud.  It is questionable whether the issuance of a PIN by Firestone can even be characterized as a "representation" by Firestone. Assuming that the issuance of a PIN was a representation, the factual allegations do not support an inference that the issuance of a PIN is a representation that the type of roof installed on Plaintiff's building was a Firestone EPDM Roofing System.  The complaint fails to elucidate, with any degree of specificity or particularity, the purpose of a PIN and its relationship to Firestone's products and warranties.  The allegations constituting Plaintiff's fraud claim against Firestone are cryptic.

Further, by the time the PIN was allegedly issued, construction on the leaking roof had already been completed, and the roof had been leaking for almost *one year*.  Obviously, Plaintiff knew before October 23, 2005, that the roof was either not a Firestone EPDM Roofing System or was not covered under a warranty because BCI and Lafayette allegedly refused to repair the roof, while Plaintiff's employees were busy toiling away at the flooded building, pouring bleach on its walls, transforming its floors into a minefield of buckets to collect the leaking water, and shielding office equipment from the elements.  Plaintiff cannot have relied on an alleged fraudulent misrepresentation by Firestone that Plaintiff admits occurred *after* the events giving rise to its cause of action had already transpired.

Moreover, Plaintiff does not contend that Firestone fraudulently induced it to enter into a contract  to replace the defective roof with a new Firestone EPDM Roofing System on or after October 23, 2005, the date of the alleged fraudulent misrepresentation.  In fact, Plaintiff concedes that it abandoned its efforts to hire Sunbelt to construct a new Firestone EPDM Roofing System because it learned that Firestone would *not* issue a PIN or warrant the prospective roof.  In essence,

Plaintiff has failed to adequately communicate in the complaint how it was misled by Firestone.   *Ziemba*, 256 F.3d at 1202.

Finally, the complaint fails to identify what Firestone gained as a consequence of its alleged fraud.  *Id*. In its response to the motion, Plaintiff states that

> [Firestone] obtained it's [sic] intended result of furthering the misrepresentations that the roof was a Firestone roofing system and received other benefits, which Plaintiff will allege more specifically following discovery.

Plaintiff fails to identify what Firestone gained or might have gained by fraudulently representing that it manufactured a product that it did not.  Plaintiff avers that the roof that was installed on its building was not a Firestone EPDM Roofing System.  Plaintiff does not explain why a company would voluntarily choose to identify itself as the manufacturer of a defectively-installed roof that has resulted in substantial damage to a Credit Union if it did not, in fact, manufacture that roof.  Plaintiff fails to explain why a company would issue a PIN, allegedly the first step in the warranty process, to warrant a product that it did not manufacture. Plaintiff essentially urges this Court to find it reasonable that a company would voluntarily expose itself to liability by warranting a product that it did not create. Plaintiff's allegations are illogical. Further, Plaintiff's assertion that it will identify "other benefits" received by Firestone after discovery does not justify a fishing expedition based on incoherent allegations.

Because Count XV fails to state a claim upon which relief can be granted against Firestone, it is dismissed as to Firestone.  However, because it is conceivable that Plaintiff could state a viable claim for fraud against Firestone, dismissal is without prejudice, and Plaintiff is granted leave to amend Count XV.

## C.  Count XVI (Suppression)

The claim for suppression asserted in Count XVI also fails to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).  Plaintiff clarifies in its response to the motion that its claim for suppression is actually a claim for fraudulent concealment.  A fraudulent concealment claim is subject to Fed. R. Civ. P. 9(b)'s requirement that the circumstances constituting fraud shall be stated with particularity. *Greenberg v. Miami Children's Hosp. Research Inst., Inc.*, 264 F. Supp. 2d 1064, 1073 (S.D. Fla. 2003).  Plaintiff alleges in Count XVI that

> On or about December 15, 2004, and continuing thereafter until the present, Defendant[] . . . Firestone . . . suppressed the material fact from Plaintiff that a Firestone roofing system was not installed.
>
> The suppressions by Defendant[] were withheld consciously and/or willfully and/or deliberately and/or oppressively and/or intentionally and/or fraudulently and/or wantonly.
>
> Defendant[] [was] under a duty, because of the circumstances in this particular case and/or because the law implies or imposes such a duty, to communicate and disclose the material facts hereinafter mentioned to Plaintiff.
>
> Based on the suppression of the material facts by Defendant[], Plaintiff reasonably and justifiably relied to their [sic] detriment by proceeding with the installation . . .

(Compl., Doc. 1, p. 18 at ¶¶ 75-78.)

The allegations in Count XVI, when read in  conjunction with all factual averments contained in the complaint, fail to establish a "plausible" or "factually

suggestive" claim for fraudulent concealment against Firestone.  To properly assert

a claim for fraudulent concealment under Florida law, Plaintiff must establish:

>    (1) a misrepresentation of material fact or suppression of
>    the truth;
>
>    (2) [a] knowledge of the representor of the
>    misrepresentation, or [b] representations made by the
>    representor without knowledge as to either the truth or
>    falsity, or [c] representations made under circumstances in
>    which the representor ought to have known, if he did not
>    know, of the falsity thereof;
>
>    (3) an intention that the representor induce another to act on
>    it; and
>
>    (4) resulting injury to the party acting in justifiable reliance
>    on the representation.

*Jones v. General Motors Corp.*, 24 F. Supp. 2d 1335, 1339 (M.D. Fla. 1998).

Assuming that the factual allegations in the complaint are sufficient to

satisfy the first element of a claim for fraudulent concealment, the allegations are

insufficient to satisfy the three remaining elements.  As to the second element, the

complaint fails to set forth sufficient facts suggesting that Firestone knew or ought

to have known, before or during the installation of the roof, that Plaintiff entered

into a contract with BCI and Lafayette to install a Firestone EPDM Roofing

System and did not receive it.  Plaintiff alleges that its communications were with

BCI and Lafayette, not with Firestone; that BCI and Lafayette, not Firestone,

falsely represented to Plaintiff that the roofing system had been installed; that BCI

and Lafayette, not Firestone, overcharged Plaintiff for a roof that was not the

roofing system purchased by Plaintiff; and that BCI and Lafayette, not Firestone,

failed to repair the roof when it leaked.  Plaintiff fails to assert any facts from which a reasonable inference can be drawn that *Firestone* had knowledge, or ought to have had knowledge, of any of these alleged events.  According to the complaint, Firestone does not even "enter the picture" until October 23, 2005, one year after the roof was installed, when it issued a PIN for the roof.

As to the third element, even assuming that Firestone knew that the roofing system installed by Lafayette was not a Firestone roofing system, no reasonable inference can be drawn that Firestone intended to induce Plaintiff to act in any manner by withholding that information. The factual allegations fail to suggest why Firestone would deceive Plaintiff into believing that Firestone manufactured a roof that it allegedly did not manufacture or why Firestone would issue a PIN for a leaking, defectively installed roof that it did not manufacture.  The allegations relating to Firestone are disjointed.

As to the fourth element, the allegations relating to Count XVI fail to establish that Plaintiff relied on Firestone's alleged suppression of information. The only plausible inference established by the complaint's factual allegations is that Plaintiff relied, not on the *suppression* of information by Firestone, but on the alleged affirmative *representations* of BCI and Lafayette that a Firestone roofing system was being installed.

Finally, Plaintiff's claim for fraudulent concealment fails because Plaintiff has not established that Firestone owed Plaintiff a duty to divulge the information it allegedly suppressed.  In paragraph 77 of the complaint, Plaintiff states that

> Defendants were under a duty, because of the circumstances in this particular case and/or because the law implies or imposes such a duty, to communicate and disclose the material facts hereinabove mentioned to

Plaintiff.

(Compl., Doc. 1, p. 18 at ¶ 77.)  The assertion of duty is obscure.  Plaintiff does not identify which "circumstances in this particular case" give rise to a duty or which law "implies or imposes"  upon Firestone a duty to disclose any information to Plaintiff.

Plaintiff's response to the motion suggests that Firestone was under a duty to disclose because it possessed "superior, absolute, and exclusive" knowledge about BCI, Lafayette, and the roof.  However, the allegations do not sufficiently establish such knowledge.  According to Plaintiff's own allegations, the roof that was installed was not even a Firestone roof.

The cases cited by Plaintiff are inapposite.  Those cases involved a contractual relationship between the parties from which a duty of disclosure arose, see *Vokes v. Murray, Inc.,* 212 So. 2d 906, 909 (Fla. 2d DCA 1968), or a third party's tortious interference with a contractual relationship between the plaintiff and the defendant, see *Franklin v. Brown*, 159 So. 2d 893 (Fla. 1st DCA 1964). Plaintiff does not contend that a contractual relationship existed between it and Firestone, although Plaintiff strains to contrive and manufacture such a relationship.  Nor does Plaintiff contend that Firestone tortiously interfered with a contract between it and BCI/Lafayette.

Plaintiff also attempts to impart upon Firestone a duty of disclosure by contending that Firestone voluntarily provided information about the roof when it issued a PIN.  Plaintiff contends that Firestone was then obligated to "tell the whole truth" that the roof was not a Firestone roof.  The factual allegations are insufficient to permit an inference that Firestone's single act of issuing a PIN is a representation that would impart a duty upon it.  Plaintiff does not explain the

significance of a PIN, nor does it establish that issuing a PIN is an affirmative representation by Firestone that it manufactured the roof.  If Firestone issued a PIN on a roof that it did not manufacture, the only logical conclusion is that Firestone, like Plaintiff, believed that the roof was a Firestone roof.  Plaintiff does not explain why a company would begin the process of placing a roof under warranty if it knew that it did not manufacture the roof.

Because Count XVI fails to state a claim upon which relief can be granted against Firestone, it is dismissed as to Firestone.  However, because it is conceivable that Plaintiff could state a viable claim for fraudulent concealment against Firestone, dismissal is without prejudice, and Plaintiff is granted leave to amend Count XVI.

## D.  Counts XVII, XVIII, and XIX (Conspiracy)

Finally, the allegations in Counts XVII, XVIII, and XIX, when read in conjunction with all factual averments contained in the complaint, fail to establish "plausible" or "factually suggestive" claims for conspiracy against Firestone. Plaintiff contends that Defendants, including Firestone, "worked in concert to suppress the fact that Defendants had not installed said roof using Firestone materials and that the Credit Union had been grossly overcharged for an inferior roof" (Count XVII); "worked in concert by suppressing the fact to Plaintiff that said roof was accompanied by a Firestone warranty" (Count XVIII); and "worked in concert in charging Plaintiff more than double the typical cost of a roof installation like the said roof job performed by Defendants" (Count XIX).

An actionable claim for civil conspiracy requires an actionable underlying tort or wrong.  *Raimi v. Furlong*, 792 So. 2d 1273, 1284 (Fla. 3d DCA 1997);

*Florida Fern Growers Ass'n, Inc. v. Concerned Citizens of Putnam County*, 616 So. 2d 562, 565 (Fla. 5th DCA 1993); *Wright v. Yurko*, 446 So. 2d 1162, 1165 (Fla. 5th DCA 1984).  Because all underlying torts or wrongs alleged by Plaintiff against Firestone have been dismissed, Plaintiff's claims for conspiracy against Firestone are not actionable and must be dismissed.  Because it is conceivable that Plaintiff could state viable claims for conspiracy against Firestone, dismissal is without prejudice, and Plaintiff is granted leave to amend Counts XVII, XVIII, and XIX.[6]

### III.  Conclusion

1.  The Motion to Dismiss Plaintiff's Complaint filed by Defendant Firestone Building Products Company, a division of BFS Diversified Products, LLC ("Firestone") (Doc. 8) is **granted**.  All counts asserted against Defendant Firestone, Counts I through IV, XII, XIII, and XV through XIX, are **dismissed without prejudice**.

2.  As to all counts asserted against Defendant Firestone that have been dismissed without prejudice, Plaintiff is granted leave to amend the complaint.  Not later than February 22, 2008, Plaintiff shall, if appropriate, file an amended complaint.

---

[6]Although this order dismisses the claims against Firestone without prejudice and grants Plaintiff leave to amend those claims, Plaintiff's counsel is reminded of its obligation to only assert claims that are warranted by existing law and that are supported by the evidence.  If Plaintiff believes it has a legitimate, viable claim against Firestone, it should correctly and succinctly state it.  If not, Plaintiff should refrain from amending the complaint.

3.  All fictitious defendants named in the complaint are stricken and shall not be named as defendants in the amended complaint.

**ORDERED** on February 8, 2008.

/s/ Richard Smoak
**RICHARD SMOAK**
**UNITED STATES DISTRICT JUDGE**